**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD**

**ROBERT E. GRAHAM,**

**Plaintiff,**

**v.**

**CIVIL ACTION NO. 1:10-cv-00453
Honorable David A. Faber**

**NATIONAL UNION FIRE INSURANCE CO.
OF PITTSBURGH, PA.,**

**Defendant.**

**DEFENDANT NATIONAL UNION FIRE INSURANCE CO. OF
PITTSBURGH PA.'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

In this litigation, Plaintiff Robert Graham seeks to recoup from Defendant National Union Fire Insurance Co. of Pittsburgh, PA ("National Union") his legal fees incurred in defending claims brought against him by the State of West Virginia and others in a 2004 civil action. This matter involves contractual interpretation and can be summarily resolved without discovery.[1] The National Union insurance policy covering Graham's former employer, the Council on Aging, has at least four separate exclusions precluding coverage for the claims made against Graham. National Union's declination of coverage in 2004 was warranted, and summary judgment in favor of National Union is now appropriate.

[1] National Union has served discovery on plaintiff focusing on the issue of Plaintiff's alleged damages.

## I. FACTUAL BACKGROUND

On April 29, 2004, the State of West Virginia filed a "Complaint for Injunction, Writ of *Quo Warranto* and Ancillary Relief" (hereinafter "underlying litigation") in the Circuit Court of Kanawha County, West Virginia, Judge Charles King presiding, against Robert E. Graham and two not-for-profit corporations, alleging that the corporations had made excessive salary and benefits distributions to Graham. The Complaint sought the Court's determination as to whether "Graham misappropriated, or otherwise inappropriately used, the resources of the corporate defendants for his personal enrichment and other unauthorized purposes and if so, [to] grant such relief as may be necessary to recoup such resources..." (2004 Complaint, Introductory Paragraph, attached to Motion as Exhibit 1.)

According to the Complaint, Graham was the executive director of the Council on Aging, Inc., ("Council on Aging") which operated two senior citizen centers in Wyoming County, West Virginia, and All Care Home and Community Services, Inc. ("All Care") (collectively referred to as "Corporations"), which provided case management services for the elderly and disabled. (Exhibit 1, ¶¶ 5-7.) The Complaint further alleged that the West Virginia Bureau of Senior Services conducted an investigation into allegations that Graham was receiving excessive compensation as the Executive Director of the corporate defendants. (Exhibit 1, ¶ 10.) The investigation revealed that in addition to his earnings of $457,872.28 in fiscal year ending September 30, 2003, Graham took numerous vacations with no business justification which were paid for by one or more of the corporate defendants, and that he used expensive automobiles and exercise equipment paid for by the corporate defendants. (*Id.* ¶¶ 24-28.)

Graham's counsel forwarded the Complaint to National Union's agent AIG Claims Services, Inc. ("AIGCS") and sought coverage. AIGCS promptly investigated and advised Graham that the claims against him were not covered by the policy of insurance issued

to the Council on Aging and that National Union did not insure All Care (correspondence collectively attached to Motion as Exhibit 2.).[2]

The state court litigation continued. Graham ultimately resigned from the Corporations on August 31, 2006. The Council on Aging, through a new Board of Directors, passed a resolution dated March 17, 2008, whereby it resolved to not rehire Graham and to not permit Graham involvement in any aspect of the Council's business. (Resolution attached to Motion as Exhibit 3.)

Kanawha County Circuit Court Judge Charles King entered summary judgment in favor of Graham by an order issued September 24, 2009. He determined that the issues raised in the State's complaint were legally moot based on the resolution and the changes in circumstances since the filing of the State's complaint. (Summary Judgment Order, attached to Motion as Exhibit 4).

Graham filed the instant litigation on March 3, 2010. He contends that National Union wrongfully failed to provide him a legal defense for the claims made against him by the State of West Virginia and others. He seeks to recoup attorney fees from the underlying litigation, as well as his fees in this action and additional non-economic damages.

---

[2] Although the insurance policy at issue was issued by National Union and was adjusted by AIGCS, the actual funding for claims under the insurance policy is ultimately paid by the State of West Virginia. As explained in *Johnson v. C.J. Mahan Const. Co.*, 210 W.Va. 438, 443, 557 S.E.2d 845, 850 (2001):

> The Legislature created The State Board of Insurance [Risk and Insurance Management] (BRIM) to supervise the state's liability insurance plans. W. Va. Code § 29-12-1, et. seq. Pursuant to this responsibility, BRIM established the equivalent of a self insurance program administered by, but not funded by, a private insurance company, American International Group (AIG). The "premium" in the BRIM arrangement is a fund set aside by the State from which the claims are paid. The determination of which claims should be paid and which denied is governed by the "policy," which, like an ordinary insurance policy, states coverages and exclusions from coverage.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides:

> [t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party. In this case, the insurance contract and its exclusions are clear and unambiguous. There is no coverage for the claims made against Graham in the underlying litigation due to policy exclusions. Summary judgment is appropriate.

## III. ANALYSIS

This matter is subject to federal diversity jurisdiction. Thus, West Virginia substantive law controls the construction of the insurance policy and National Union's alleged duty to provide a defense. See *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004). "As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy."[3] *Aetna Cas. & Sur. Co. v. Pitrolo*,

---

[3] As the Supreme Court of Appeals of West Virginia explained in *Tackett v. American Motorists Ins. Co.*, 213 W. Va. 524, 528, 584 S.E.2d 158, 162 (2003):

> A contract for indemnification from loss typically also includes a provision whereby the insuring entity agrees to provide legal representation to said insured with respect to any claims filed against him/her for which the subject policy provides coverage. This type of arrangement has come to be known as the insurer's duty to defend. *See, e.g.*, Black's Law Dictionary 523 (7th ed.1999) (defining "duty-to-defend clause" as "[a] liability-insurance provision obligating the insurer to take over the defense of any lawsuit brought by a third party against the insured on a claim that falls within the policy's coverage"). Unquestionably, the terms of the pertinent insurance contract govern the parties'

176 W. Va. 190, 194, 342 S.E.2d 156, 160 (W. Va. 1986). An insurer only has a duty to defend an action "if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers." *State Automobile Mutual Ins. Co. v. Alpha Engineering Services, Inc.*, 208 W. Va. 713, 716, 542 S.E.2d 876, 879 (2000). Thus, an insurer has no duty to defend where "the alleged conduct is entirely foreign to the risk insured against." *Horace Mann Ins. Co. v. Leeber*, 180 W. Va. 375, 378, 376 S.E.2d 581, 584 (1988).

In analyzing the issue of an alleged duty to defend, the court need not adjudicate the underlying facts. In *West Virginia Fire & Cas. Co., v. Stanley*, 216 W. Va. 40, 47, 602 S.E.2d 483, 490 (2004), the Supreme Court of Appeals of West Virginia examined whether there was insurance coverage for an insured who had been accused of sexual misconduct. The lower court entered summary judgment in favor of the insurer and the Supreme Court affirmed, noting the following:

> An evidentiary hearing for the purpose of determining the truth or falsity of the allegations in the complaint below was not necessary in order to determine whether there is coverage. The dispositive question is answered by looking at the allegations in [Plaintiffs'] complaint to determine whether the allegations are reasonably susceptible of an interpretation that the claim may be covered. . . . *whether there was in fact sexual abuse is not material to answering the question before the circuit court, and does not preclude summary judgment*.

*Id.* (emphasis added.)

Similarly, whether the allegations against Graham in the 2004 litigation are true or false is irrelevant to the Plaintiff's present claims against National Union. The outcome of the underlying litigation is not determinative of whether National Union was obligated to defend

---

relationship and define the scope of coverage as well as the existence of the insurer's duty to defend its insured.

Graham in 2004. *See id.* Rather, the allegations in the Complaint and the policy language must be examined to see whether the claims could impose liability for the risks the policy covers. *Alpha Engineering Services, Inc.*, 208 W. Va. at 716, 542 S.E.2d at 879.

West Virginia law is clear that the "language in an insurance policy should be given its plain, ordinary meaning." *Aluise v. Nationwide Mut. Fire Ins. Co.*, 218 W. Va. 498, 506, 625 S.E.2d 260, 268 (2005). And, "[w]here the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Id.*

In this case, there is no coverage for the claims in the underlying litigation and National Union had no duty to defend Graham. The West Virginia Supreme Court has noted that "included in the consideration of whether [an] insurer has a duty to defend is whether the allegations in the complaint ... are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance polic[y]." Syl. pt. 3, *Bruceton Bank v. United States Fid. Guar. Ins. Co.*, 199 W. Va. 548, 486 S.E.2d 19 (1997). The allegations set forth in the underlying litigation do not meet the "reasonably susceptible" standard for a duty to defend. See *Aluise*, 625 S.E.2d 269-70 (for a duty to defend to exist, there must be allegations in the complaint which would fall within coverage afforded under the policy).

National Union does not contest that the claims contained in the underlying litigation fall under the definition of "wrongful acts" as defined in Policy GL 6124043,[4] (Copy of policy attached to Motion as Exhibit 5, sometimes hereinafter referred to as "the Policy") or that Graham, as the director of an insured corporation, could potentially be eligible for coverage under that Policy under certain circumstances. The determinative question is whether the alleged

[4] The policy defines "wrongful acts" as "any actual or alleged act, breach of duty, neglect, error, misstatement, misleading statement or omission by the "insured(s)" in the performance of their duties for the "Named Insured," individually or collectively, or any matter claimed against them solely by reason of their having been "insured(s)." (Exhibit 5 at Bates number NU/Graham 000134.)

wrongful acts were excluded from coverage because they fall within one or more policy exclusions. As set forth in detail below, there are four separate exclusions in the National Union policy insuring the Council on Aging which precluded an obligation by National Union to provide Graham a defense to the claims in the underlying litigation.

### *A. Non-pecuniary relief endorsement*

Endorsement #14 of the Policy provides:

> No insurance coverage exists for any and all claims, demands or actions seeking relief in any non-pecuniary form, including but not limited to injunctions, equitable relief, and declaratory judgments, and to any claims, demands, or actions seeking relief in the form of attorney fees, expenses, or other costs against the insured made in conjunction with, or as a result of, any claim for non-pecuniary relief.

(Exhibit 5 at Bates number NU/Graham000159.)

The Complaint in the underlying litigation is entitled "Complaint for Injunction, Writ of *Quo Warranto* and Ancillary Relief." The Complaint states:

> Plaintiff respectfully requests that this Court permit such inquiry and enter such orders as will enable the Court to determine whether defendant Graham has misappropriated, or otherwise improperly used, the resources of the corporate defendants for his personal enrichment and other unauthorized purposes and, if so, to grant such relief as may be necessary to recoup such resources and to ensure that the resources of the defendant corporations are hereinafter devoted exclusively to the charitable purposes for which they were formed – serving senior citizens and the disabled.

(See Complaint, attached to Motion as Exhibit 1 at p. 2.) The underlying litigation sought only equitable and injunctive relief. As plainly stated in the Complaint, the State sought to prevent future wrongful conduct and to effectuate disgorgement of wrongfully obtained funds. (See *id.*) The State *did not* seek pecuniary damages. See, e.g., *Cincinnati Ins. Co., v. Milliken and Co.*, 857 F.2d 979 (4th Cir. 1988) (affirming district court's decision that the equitable relief sought by

the United States was not within the coverage of two policies which provided that insurance company would pay all sums which insured "shall become legally obligated to pay as damages, because of: property damage to which this insurance applies."). The non-pecuniary relief exclusion in policy GL 6124043 issued by National Union to the Council on Aging specifically states that equitable relief is non-pecuniary and is not covered. The exclusion is clearly applicable and there is no coverage for Graham under the Policy.

### *B. Personal Profit Exclusion*

Exclusion A to Coverage E, "Wrongful Act Liability Insurance," contained in the Policy provides:

> This insurance does not apply to:
>
> A. Any claim based upon or attributable to the "insured" gaining in fact any personal profit or advantage to which they were not legally entitled, including remuneration paid in violation of law as determined by the courts.

(Exhibit 5 at Bates number NU/Graham 000132.)

Applying basic rules of statutory construction, in order for the Personal Profit Exclusion to apply to Graham, the underlying claim against Graham must be based upon, arising from, or in consequence of, Graham's having gained in fact any personal profit, remuneration or advantage to which he was not legally entitled. See *id.* "A defendant is not legally entitled to an advantage or profit resulting from his violation of law if he could be required to return such profit." *TIG Specialty Ins. Co. v. PinkMonkey.Com, Inc.*, 375 F.3d 365, 371 (5th Cir. 2004) (finding applicable personal profit exclusion and noting "[b]ecause return of the capital investment in PinkMonkey could have been required, there was no legal entitlement to the capital investment").

The underlying complaint alleged that Graham was unjustly enriched at the expense of senior citizens who are entitled to the benefits of the programs Graham was running. (Exhibit 1 ¶ 43.) The complaint alleged that Graham expended corporate funds to purchase two Lincoln Navigators, the combined cost of which was over $100,000.00, and which he and his son used as personal vehicles. (*Id.* ¶ 23.) These are certainly allegations of Graham's receipt of "personal profit." Further, Graham clearly "could [have been] required to return [the alleged wrongful] profit. *See TIG,* 375 F.3d at 371. In fact, on May 19, 2004, Kanawha County Circuit Court Judge Charles King entered an order granting the State's request for injunctive relief and directed that (1) Graham preserve his personal assets; (2) Graham be prevented from accepting any payment or benefit from the Corporations other than current base salary; and (3) that the Corporations preserve all financial records. As a part of the underlying litigation, Graham could potentially have been required to return to the corporate defendants the "profit" he received in the form of money categorized as salary, bonuses, overtime pay, travel expenses and other perks. (Order for Preliminary Injunction Attached to Motion as Exhibit 6.)

It is important to note that the actual veracity of the assertions against Graham contained in the underlying litigation is irrelevant to whether the personal profit exclusion applies. The issue of whether there is a duty to provide a defense hinges solely on the allegations contained in the underlying complaint, and not their veracity. *E.g., West Virginia Fire & Cas. Co., v. Stanley*, 216 W. Va. 40, 47, 602 S.E.2d 483, 490 (2004). The language of the exclusion at issue focuses on the "claims" made against the insured and not the ultimate adjudication of those claims. The exclusion states that the insurance *does not apply* to "any ***claim*** based upon ... personal profit"— by its plain language, the exclusion does not relate to the outcome of the claim but the assertions contained in the "claim" itself. Thus, the fact that Graham received an entry of summary judgment in his favor in the underlying litigation (which, according to the Order, was

based largely on the terms of an Agreement between Graham and the Corporations) is completely irrelevant to the applicability of the personal profit exclusion.

The plain language of the underlying complaint involves allegations of Graham gaining personal profit and advantage to which he was not legally entitled. The personal profit exclusion is applicable.

### *C. Wages, Salary and Benefits Exclusion*

Exclusion I to Coverage E, "Wrongful Act Liability Insurance," contained in the policy provides:

> This insurance does not apply to:
>
> ***
>
> I. To any claim(s) made against the "insured" for damages attributable to wages, salaries and benefits.

(Exhibit 5 at Bates number NU/Graham 000134.) The underlying litigation sought remuneration of amounts "attributable to wages, salaries, and benefits" allegedly wrongfully obtained by Graham. The suit sought disgorgement of excess compensation paid to Graham. (Exhibit 1 at Relief Requested). The wages, salary and benefits exclusion is triggered. See, e.g., *Deel v. West Virginia EMS Technical Support Network*, 2009 WL 2213473 *3 (S.D.W. Va. 2009)(copy of unpublished decision attached as Exhibit 7) (construing National Union policy as it pertained to litigation against insured West Virginia EMS Technical Support Network and concluding "[i]nasmuch as Exclusion 2.H excludes claims made against WVEMS for damages attributable to wages, salaries, and benefits, the damages described in the first paragraph of the stipulation are not covered by the policy."). The suit against Graham sought the return of excess

compensation, including salary and benefits, which was paid to Graham by the Council on Aging and All Care. The wages, salary and benefits exclusion is applicable.

**D. *Non-Specific Damages Exclusion***

Endorsement #17 of the policy provides:

> ***No insurance coverage exists for any and all claims, demands or actions unless the specific demand for relief seeks compensatory or punitive damages*** (to the extent such punitive damages are allowed under existing law). Non-specific or general demands for judgment or relief, such as “for any other such relief as the court deems just and proper" and other similar types of demands, do not create a duty to either defend or pay under the terms and conditions of this policy.

(Exhibit 5 at Bates number NU/Graham 000163, emphasis added.) The underlying complaint did not seek compensatory or punitive damages. As a matter of express contractual terms, this exclusion also applies to exclude coverage for the underlying suit.

## IV. CONCLUSION

National Union has met its burden of establishing that four separate and independent exclusions apply to preclude coverage under Policy GL 6124043 for the underlying litigation against Plaintiff Robert E. Graham. National Union owed no contractual obligation to provide Graham a defense. Summary judgment in favor of National Union is appropriate**.**

s/Neva G. Lusk
Neva G. Lusk (WV State Bar #2274)
Lisa J. Bray (WV State Bar #7696)
Attorneys for National Union Fire Insurance
Co. of Pittsburgh, PA.
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, E. (25301)
P. O. Box 273
Charleston, WV 25321-0273
Telephone: (304) 340-3800
Fax: (304) 340-3801
E-mail: nlusk@spilmanlaw.com
E-mail: lbray@spilmanlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BLUEFIELD**

**ROBERT E. GRAHAM,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 1:10-cv-00453**
**Honorable David A. Faber**

**NATIONAL UNION FIRE INSURANCE CO.**
**OF PITTSBURGH, PA.,**

**Defendant.**

**CERTIFICATE OF SERVICE**

I, Neva G. Lusk, hereby certify that on this 9th day of July, 2010, I electronically filed "Defendant National Union Fire Insurance Co. of Pittsburgh PA.'s Memorandum of Law in Support of Motion for Summary Judgment" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

John A. Kessler, Esquire
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower
707 Virginia Street, East
Post Office Box 913
Charleston, West Virginia 25323

s/ Neva G. Lusk
Neva G. Lusk (WV State Bar #2274)
Lisa J. Bray (WV State Bar #7696)
Attorneys for National Union Fire Insurance Co. of Pittsburgh, PA.
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, E. (25301)
P. O. Box 273
Charleston, WV 25321-0273
Telephone: (304) 340-3800
Fax: (304) 340-3801