IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

ROBERT E. GRAHAM,
       Plaintiff,

v.                          CIVIL ACTION NO.: 1:10-00453

NATIONAL UNION INSURANCE CO.
OF PITTSBURGH, PA,
       Defendant.

## MEMORANDUM OPINION AND ORDER

Before the court are defendant's motion for summary judgment (Doc. # 13) and plaintiff's motion for summary judgment (Doc. # 18).  For reasons more fully explained below, the court **GRANTS** defendant's motion for summary judgment and **DENIES** plaintiff's motion for summary judgment.

### I. Factual Background and Procedural History

This case involves an insurance coverage dispute between plaintiff, Robert E. Graham ("Graham") and defendant, National Union Insurance Company of Pittsburgh, PA ("National Union"). Graham alleges that National Union breached its contractual obligation to pay the costs of Graham's legal defense in a West Virginia state court lawsuit brought against Graham ("the underlying lawsuit").  See Exhibit A to Defendant's Notice of Removal.[1]

---

[1] The Policy at issue in this case is the policy between National Union and The Council on Aging, attached to defendant's motion for summary judgment as Exhibit 5.

The State of West Virginia brought the underlying lawsuit on April 24, 2004.  See Exhibit 1 to Defendant's Motion for Summary Judgment.  In its Complaint, the State of West Virginia accused Graham of misappropriating, or otherwise misusing the corporate resources of the Council on Aging, Inc. and All Care Home and Community Services, Inc., both West Virginia nonprofit corporations.  See id. p. 2.  The State alleged among other things that Graham, in his capacity as Executive Director of both corporations, collected excess compensation and benefits related to his employment.  See id. pp. 6-9.  Acting promptly, Graham's counsel wrote to National Union on April 27, 2004, requesting that National Union pay for Graham's legal fees in the underlying lawsuit.  See Exhibit C to Plaintiff's Motion for Summary Judgment.  On April 29, 2004, National Union denied Graham coverage.  See Exhibit 2 to Defendant's Motion for Summary Judgment.  Graham then proceeded to pay his own legal fees related to the underlying lawsuit.  See Plaintiff's Motion for Summary Judgment, p. 3.  On September 24, 2009, the Circuit Court for Kanawha County, West Virginia, entered summary judgment in Graham's favor, ending the state court litigation.  See id.

On March 3, 2010, Graham filed suit against National Union in the Circuit Court of Mercer County, West Virginia, seeking to recoup from National Union the cost of Graham's defense in the underlying lawsuit.  See Exhibit A to Defendant's Notice of

Removal.  Additionally, Graham sought to recover the cost of the instant litigation as well as any other damages due to him for National Union's allegedly unlawful failure to provide him coverage in the underlying lawsuit.  <u>See</u> <u>id.</u>  On April 6, 2010, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, National Union removed the case to federal district court.[2]  <u>See</u> Defendant's Notice of Removal.  After a brief period of discovery, both parties moved for summary judgment, asserting that there were no disputed facts in the case.

<u>II. Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure **provides that**

> **[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.**

---

[2]  Although Graham did not specify a dollar amount for the total value of damages he is seeking from National Union, it is apparent from a review of the record that the $75,000 jurisdictional amount in controversy requirement is satisfied.  "The amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." <u>Hutchens v. Progressive Paloverde Ins. Co.</u>, 211 F. Supp. 2d 788, 791 (S.D. W. Va. 2002) (citing <u>McCoy v. Erie Ins. Co.</u>, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001)).  Plaintiff seeks reimbursement for five years worth of legal fees, in addition to payment of the costs and attorney's fees of this action.  Further, Graham also alleges wrongful denial of coverage by National Union under the <u>Hayseeds</u> case.  Were plaintiff to succeed on this claim, he could recover punitive damages, which would significantly increase the total value of his overall recovery.

Fed. R. Civ. P. 56.  **The moving party has the burden of establishing that there is no genuine issue as to any material fact.**  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  **As was explained in <u>Celotex</u>, "the plain language of** Rule 56(c) **mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."**  <u>Id.</u> at 322.

Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence
> in support of the plaintiff's position will
> be insufficient; there must be evidence on
> which the jury could reasonably find for the
> plaintiff.  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors
> could find, by a preponderance of the
> evidence, that the plaintiff is entitled to a
> verdict . . . .

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  **"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."**  <u>Id.</u> at 250-51.  **Significantly, "a party opposing a properly supported motion for summary judgment may not**

4

rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

### III. Analysis

In this diversity action, state law controls the court's construction of the insurance policy. In re Nantahala Village, Inc., 976 F.2d 876, 880-81 (4th Cir. 1992). Neither party disputes that West Virginia law governs this case.

West Virginia law is clear that the "language in an insurance policy should be given its plain, ordinary meaning." Aluise v. Nationwide Mut. Fire Ins. Co., 218 W. Va. 498, 506, 625 S.E.2d 260, 268 (2005). "Where the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Id.

Where a plaintiff asserts that an insurance company wrongfully refused to pay for his defense, "an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Aetna Cas. & Sur. Co. v. Pitrolo, 176 W. Va. 190, 342 S.E.2d 156, 160 (1986). In making this determination, the court need not adjudicate the underlying facts. West Virginia Fire & Cas. Co.

5

v. Stanley, 216 W. Va. 40, 602 S.E.2d 483, 490 (2004).
Significantly, "an insurer has a duty to defend an action against
its insured only if the claim stated in the underlying complaint
could, without amendment, impose liability for risks the policy
covers."  State Auto. Mutual Ins. Co. v. Alpha Engineering Serv.
Inc., 208 W. Va. 713, 542 S.E.2d 876, 879 (2000); see also
Stanley, 602 S.E.2d at 494.

        Neither party disputes that Graham was an "insured" under
the contract, or that his alleged misfeasance would have
qualified as a "wrongful act" under the policy.  See Memorandum
in Support of Defendant's Motion for Summary Judgment, p. 6.  The
dispute between the parties centers on whether one of the
coverage exceptions provided in the contract applies to Graham's
situation.  National Union contends that four exceptions apply,
an interpretation which Graham disputes.

*The "wages, salary and benefits exclusion"*

        The insurance policy contains ten enumerated exclusions,
which are listed in Part E, Section 2 of the policy.  See Exhibit
5 to Defendant's Motion for Summary Judgment, pp. 18-20.  Having
reviewed the allegedly applicable exclusions proposed by National
Union, the court agrees that one of the exclusions applies.  The
"wages, salary and benefits exclusion," subsection (I), provides
that insurance coverage does not apply "To any claim(s) made

6

against the 'insured' for damages attributable to wages, salaries and benefits." <u>See</u> Exhibit 5 to Defendant's Motion for Summary Judgment, p. 20.  The complaint in the underlying lawsuit focused on Graham's excessive compensation and disproportionately generous benefits package as one of the central ways in which Graham abused his position and misappropriated his employer's resources.  <u>See</u> Exhibit 1 to Defendant's Motion for Summary Judgment, pp. 6-9.  The State of West Virginia cited Graham's compensation package as one of the central evidentiary pillars on which they based their case.  <u>See</u> <u>id.</u> at 6.  Further, the State of West Virginia asked the Kanawha County Circuit Court to order that Graham disgorge any unlawfully obtained money and return such amounts to his former employer.  <u>See</u> <u>id.</u> at 2.  Plainly, the claims for damages brought by the State of West Virginia against Graham are directly "attributable to wages, salaries and benefits."  Thus, under the plain language of the exclusion, which is unambiguous, National Union had no duty to defend Graham in the underlying lawsuit.

Graham counters National Union's assertion that the "wages, salary and benefits exclusion" applies.  Graham's principal argument is that language from another exclusion, subsection (C), creates coverage for all fraud-related claims brought against the insured, so long as the validity of those claims has not yet been

7

proved.  See Plaintiff's Motion for Summary Judgment, p. 7.[3]
Graham's contention is unavailing, for the language he relies on
modifies only the scope of the exclusion in which the language is
contained; namely, exclusion (C).  It does not, as Graham would
have the court believe, render all other exclusions obsolete.
See Exhibit 5 to Defendant's Motion for Summary Judgment, pp. 18-
20.

Graham also cites Deel v. West Virginia EMS Tech. Support
Network, Inc. for the proposition that the language of the
"wages, salary and benefits exclusion" is intended to apply to
difference circumstances.  Deel v. West Virginia EMS Tech.
Support Network, Inc., 2009 WL 2213473 (S.D.W. Va. July 23,
2009).  Specifically, Graham argues that the language is intended
to prevent employees from bringing suit against their employer
for wages, salary and benefits, and for the insurance company to
then have to provide the employer with a defense against the
employee's claim.  But Deel did not rule out that other
interpretations of such langauge are possible.  Indeed, Deel only

---

[3] The text of subsection (C) excludes from coverage
    Any claim brought about or contributed to by fraud, dishonesty, or
    criminal act of any "insured"; however, notwithstanding the
    foregoing, the "insured" shall be protected under the terms of
    this coverage part as to any claims upon which suit may be brought
    against them by reason of any alleged fraud, dishonesty or
    criminal act on the part of any "insured(s)", unless a judgement
    or other final adjudication thereof adverse to such "insured(s)"
    shall establish that acts of active or deliberate fraud,
    dishonesty or criminal act committed by such "insured(s)" or
    unless there was an admission of guilt by the "insured."
See Exhibit 5 to Defendant's Motion for Summary Judgment, p. 19.

held that the wages, salary and benefits language <u>can</u> be read to apply to situations where an employee is suing an employer for past compensation.  That is not to say, however, that that is the only possible context in which such language is applicable.

Graham's argument is also problematic because the plain language of the Council on Aging policy does not bear out such a restrictive interpretation.  By its own terms, the language indicates that the exclusion applies to "any claim" brought against "the insured."  <u>See</u> Exhibit 5 to Defendant's Motion for Summary Judgment, p. 5.  The fact that the exclusion contains the words "any claim" undermines Graham's interpretation that the exclusion should only apply to claims by employees against employers.  This is further supported by the exclusion's "against the 'insured'" language, which plainly indicates that as long as the defendant is an insured, the exclusion applies.  The policy does not say that the insured must be the employer as opposed to the employee.  Since neither party disputes that Graham is an "insured" under the policy, and since the State of West Virginia's claims against Graham in the underlying lawsuit were clearly attributable to Graham's excessive "wages, salary and benefits," the exclusion applies.

<u>IV. Conclusion</u>

For the reasons stated above, defendant, National Union, had no duty to defend plaintiff, Robert E. Graham, in the underlying lawsuit. Consequently, defendant's motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record and to remove this case from the court's docket.

It is SO ORDERED this 17th day of February, 2011.

ENTER:

David A. Faber
Senior United States District Judge