IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
IN BLUEFIELD

ROBERT E. GRAHAM,

Plaintiff,

v. Civil Action No. 1:10-00453

NATIONAL UNION INSURANCE CO.
OF PITTSBURGH, PA,

Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court are defendant's "Motion for Summary Judgment" and plaintiff's "Cross-Motion for Partial Summary Judgment." For the reasons below, the court **GRANTS** defendant's motion (Doc. No. 46) and **DENIES** plaintiff's motion (Doc. No. 48). Moreover, the court **ORDERS** the plaintiff to submit a renewed demand for damages in an amount consistent with the rulings in this Memorandum Opinion and Order.

I. Factual and Procedural Background

On April 19, 2004, the State of West Virginia, et al. (State), filed a lawsuit in the Circuit Court of Kanawha County, West Virginia, against Robert Graham (Graham) as well as two non-profit corporations for which Graham had served as Executive Director. See Doc. No. 13-1. The State's Complaint alleged, among other things, that Graham had misappropriated or otherwise inappropriately used the corporations' resources for personal

enrichment and other unauthorized purposes. Doc. No. 13-1, at 2. Accordingly, the State sought various forms of relief to stop Graham's practices and restore the corporations' ability to perform their charitable functions. See Doc. No. 13-1, at 1-2, 19-20.[1]

On April 27, 2004, Graham's counsel wrote a letter to AIG Claims Services, Inc. (AIG), which is defendant National Union's claims processor, enclosing a copy of the State's Complaint and requesting "coverage to the full extent provided under any applicable policies." Doc. No. 18-3, at 2. On April 29, 2004, AIG replied to Graham's April 27, 2004 letter, denying coverage under the Wrongful Act Liability Insurance portion of policy number GL 6124043 (Policy). Doc. No. 13-2, at 2. AIG reasoned that three exclusions to the Wrongful Act Liability coverage

[1] Some of the forms of relief sought by the State included: (1) court orders requiring Graham and the corporations to show cause why they should not be enjoined from abusing corporate powers, (2) a temporary injunction to preserve and maintain the assets and records of Graham and the corporations, (3) a complete financial accounting of Graham and the corporations to determine whether and to what extent Graham was unjustly enriched by corporate resources, (4) a permanent injunction requiring the corporations to remove Graham as Executive Director, (5) encumbrance of Graham's assets by a constructive trust to the extent he was unjustly enriched, and (6) a judgment against Graham requiring him to disgorge any excess compensation or other monies unjustly obtained and "to recompensate the State and/or the corporate defendants."

applied to the State's lawsuit against Graham.[2] See id. Accordingly, AIG explained, National Union "must respectfully disclaim coverage for indemnification or a defense of the aforementioned civil action." Doc. 13-2, at 3. On May 12, 2004, AIG wrote Graham to explain that, while the Policy insured one corporate defendant, Council on Aging, Inc., the Policy did not insure the other corporate defendant, All Care Home & Community Services, Inc. Doc. No. 13-2, at 6.

The State's lawsuit against Graham continued until September 24, 2009, when the Circuit Court of Kanawha County, West Virginia granted Graham's Motion for Summary Judgment on mootness grounds. See Doc. No. 13-4, at 11; see generally, id. (outlining facts that established the lawsuit's mootness); cf. Doc. No. 13-3 (Council on Aging, Inc. resolving "to eliminate any uncertainty, concern, question or speculation concerning any future involvement [with Graham].").

On March 3, 2010, Graham filed the instant lawsuit against National Union Fire Insurance Co. of Pittsburgh, PA (National Union) in the Circuit Court of Mercer County, West Virginia. See Doc. No. 1-2, at 2. National Union filed a timely Notice of Removal on April 6, 2010 based on diversity jurisdiction. See

[2] AIG cited (1) the Policy's Endorsement #14, which excludes claims seeking "non-pecuniary relief," (2) the "wages, salaries and benefits" exclusion found under Exclusion I of the Wrongful Act Liability coverage, and (3) the "personal profit" exclusion found under Exclusion A of the Wrongful Act Liability coverage.

Doc. No. 1 (citing 28 U.S.C. § 1332(a) as a basis for this court's original jurisdiction over the matter). National Union then responded to Graham's Complaint on April 27, 2010. Doc No. 4.

On July 9, 2010, National Union filed a Motion for Summary Judgment, alleging that only legal questions remained in the case, namely whether the State's lawsuit against Graham was the type of lawsuit covered by the Wrongful Act Liability portion of the Policy. See Doc. No. 13. National Union's Motion for Summary Judgment argued that four specific policy exclusions applied to Graham's lawsuit and, as a result, National Union had no duty to defend Graham in the State's lawsuit against him.[3] Id. On July 30, 2010, Graham responded in opposition to National Union's Motion for Summary Judgment and filed his own Cross-Motion for Summary Judgment against National Union, arguing that none of the policy exclusions cited by National Union applied to the State's lawsuit against Graham and that, by not defending Graham in the State's lawsuit, National Union breached its contractual obligations to Graham, namely its duty to defend him as an "insured" under the Policy. Doc. No. 18.

[3] National Union's Motion for Summary Judgment argued that the same exclusions cited in AIG's April 29, 2004 letter applied to the State's lawsuit against Graham. Additionally, National Union argued that a fourth exclusion applied, namely the exclusion found in Endorsement #17. Doc. No. 13, at 3.

On February 17, 2011, this court granted summary judgment in favor of National Union, finding that the Policy's "wages, salary and benefits exclusion" applied to the State's lawsuit against Graham. Doc. No. 28. Graham appealed this court's decision and the Fourth Circuit reversed, concluding that none of the Policy's exclusions should be read to eliminate National Union's duty to defend Graham in the State's lawsuit against him. Doc. No. 34. Accordingly, on August 23, 2012, this court reopened the case for further proceedings consistent with the Fourth Circuit's decision. Doc. No. 41.

On November 21, 2012, National Union filed another Motion for Summary Judgment, arguing, among other things, that Graham's demands for prejudgment interest and incidental and/or consequential damages were not allowed under West Virginia law. See Doc. No. 46. On December 5, 2012, Graham responded in opposition to National Union's Motion for Summary Judgment and filed a Cross-Motion for Partial Summary Judgment against National Union. Doc. No. 48.

## II. Applicable Law

### A. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure states, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); see also N. Carolina Growers' Ass'n, Inc. v. United Farm Workers, 702 F.3d 755, 763 (4th Cir. 2012). Moreover, Rule 56(a) authorizes summary judgment on parts of claims or defenses as well as entire claims or defenses. Fed. R. Civ. P. 56(a).

Granting summary judgment, in full or in part, may still be appropriate when only damages remain disputed. See West v. Costen, 558 F. Supp. 564, 575 (W.D. Va. 1983) (quoting a previous version of Rule 56 that stated "summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."). If summary judgment is granted when only damages are disputed, the case will proceed to trial for a determination of damages. Id.

B. First-Party Insurance and Third-Party Insurance

Insurance policies generally fall into one of two categories: first-party insurance and third-party insurance. However, these labels deceive because they refer to the nature of the policy, not the type of insured or claimant who might later assert rights under a given policy. Black's Law Dictionary defines first-party insurance as insurance that "applies to an insured or insured's own property, such as life insurance, health insurance, disability insurance, and fire insurance." Black's Law Dictionary (9th ed. 2009). Under West

Virginia law, first-party insurance "means that the insurance carrier has directly contracted with the insured to provide coverage and to reimburse the insured for his or her damages up to the policy limits."[4] Marshall v. Saseen, 192 W. Va. 94, 100, 450 S.E.2d 791, 797 (1994). Clearly, West Virginia's definition of first-party insurance emphasizes the indemnification aspect of that type of insurance.

Conversely, Black's Law Dictionary's entry for "third-party insurance" refers to "liability insurance," defining that type of insurance as "[a]n agreement to cover a loss resulting from the insured's liability to a third party, such as a loss incurred by a driver who injures a pedestrian. • The insured's claim under the policy arises once the insured's liability to a third party has been asserted." Id. Modern textbook examples of third-party insurance include, but are not limited to, Comprehensive General Liability insurance, Directors and Officers (D&O) insurance, and Errors and Omissions (E&O) insurance. These insurance types are typically purchased by a corporate or governmental entity to protect the entity or its

---

[4] West Virginia law includes underinsured or uninsured motorist insurance under the rubric of first-party insurance. Marshall v. Saseen, 192 W. Va. 94, 99, 450 S.E.2d 791, 796 (1994). However, underinsured or uninsured motorist insurance "is unusual in that it is tied to the status of a third-party tortfeasor and may also be tied to the outcome of litigation against that tortfeasor, giving this insurance some characteristics similar to liability insurance." 16 Couch on Ins. § 227:35.

agents against lawsuits. D&O policies, for example, are purchased by the corporation and generally protect corporate officers and directors against claims alleging wrongful acts against them in their capacity as officers and directors. D&O insurance is a clear example of third-party insurance, if for no other reason than its classification as a type of liability insurance. Cf. Shareholder Deriv. Actions L. & Prac. § 6:35 (2012)(stating "a number of statutes now expressly authorize the use of self-insurance or other alternative to the purchase of D&O insurance from a third-party insurance underwriter.")

West Virginia law does not directly define third-party insurance, although it does define who qualifies as a third-party claimant under any given insurance policy type. In Loudin v. National Liability & Fire Insurance Company, the West Virginia Supreme Court of Appeals addressed a unique situation in which an individual claimant under an insurance policy could qualify as both a first-party claimant and third-party claimant.[5]

[5] Loudin referred to the West Virginia Insurance Commissioner's regulations defining "first-party claimant" and "third-party claimaint." See W. Va. Code R. § 114-14-2 (defining "first-party claimant" as "an individual, corporation, association, partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract" and defining "third-party claimant" as "any individual, corporation, association, partnership or other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity insured under an

To resolve the ambiguity, the Loudin court held "when a named policyholder files a claim with his/her insurer, alleging that a nonnamed insured under the same policy caused him/her injury, the policyholder is a first-party claimant in any subsequent bad faith action against the insurer arising from the handling of the policyholder's claim." Loudin v. Nat'l Liab. & Fire Ins. Co., 228 W. Va. 34, 716 S.E.2d 696, 703 (2011). However, the dissent in Loudin clearly defines first-party and third-party insurance where the majority did not, quoting oft-cited commentators on insurance law and other jurisdictions.

Justice Benjamin's dissent quoted Couch on Insurance, agreeing that

> [f]irst-party insurance is a contract between the insurer and the insured to protect the insured from its own actual losses and expenses. Property insurance, fidelity insurance, and medical/health insurance are all examples of first-party insurance. Third-party insurance is a contract to protect the insured from losses resulting from actual or potential liability to a third party. This protection may involve defending the insured from suit, paying or settling a claim against the insured, or a combination of both. Liability insurance is third-party insurance.

14 Couch on Ins. § 198:3 (emphasis added). Despite Justice Benjamin's disagreement with the outcome in Loudin, his dissent provides the clearest and most recent delineation between first-party and third-party insurance in West Virginia.

---

insurance policy or insurance contract of an insurer.")(emphasis added).

C. Recoverable Damages under *Pitrolo* and *Hayseeds*

In West Virginia, if an insurer breaches its duty to defend an insured, the insured is entitled to recover its litigation expenses, including costs and reasonable attorney's fees. Aetna Cas. & Sur. Co. v. Pitrolo, 176 W. Va. 190, 193, 342 S.E.2d 156, 159 (1986). According to Pitrolo, allowing recovery of attorney's fees in this situation is justified "where an insurer has violated its contractual obligation to defend its insured, [because] the insured should be fully compensated for all expenses incurred as a result of the insurer's breach of contract." Id. Full compensation, according to Pitrolo, included recovery of litigation expenses incurred during the underlying civil lawsuit and the declaratory judgment action brought in that case in order to determine whether the insurer owed the insured a duty to defend. Id.

Separately, the famous Hayseeds case has been extended to provide for extra-contractual damages when an insured "substantially prevails" against an insurer in a lawsuit involving first-party insurance. See Marshall v. Saseen, 450 S.E.2d 791, 796-97 (W.Va. 1994)(extending Hayseeds to cases involving underinsured or uninsured motorist insurance, making the "critical point" that both property damage insurance and underinsured or uninsured motorist insurance are "first-party

insurance."); Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73 (W.Va. 1986). Regarding West Virginia law, Marshall could not be clearer—Hayseeds damages are only available to insureds who "substantially prevail" against insurers in lawsuits involving first-party insurance.

D. Prejudgment Interest on Attorney's Fees and Costs incurred as a result of an insurer's Breach of Duty to Defend

The West Virginia Code, Section 56-6-31, provides for prejudgment interest "if the judgment [. . .], or any part thereof is for special damages, as defined below, or for liquidated damages." W. Va. Code § 56-6-31(a). The statute goes on to define special damages to include "lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court." Id. (emphasis added). Generally, West Virginia courts construe the prejudgment interest statute to focus on the phrase "similar out-of-pocket expenditures." This focus exists, in part, because the statute demands it by the clause "as determined by the court."

In accordance with the prejudgment interest statute, the West Virginia Supreme Court has declined to extend "similar out-of-pocket expenditures" to include attorney's fees. See State ex rel. Chafin v. Mingo County Comm'n, 434 S.E.2d 40, 44 (W.Va. 1993)(noting that prejudgment interest was traditionally

"applicable only to contract actions," but had been expanded to apply to wrongful death actions involving loss or damage to real and personal property.).

## III. Analysis

### A. Nature of the parties' motions

As noted above, the Fourth Circuit reversed this court's February 17, 2011 Order granting summary judgment in favor of National Union regarding its duty to defend Graham in the State's lawsuit against him. Doc. No. 34. Accordingly, the duty portion of Graham's claim against National Union has been resolved. The only remaining questions are (1) what type of damages may Graham recover as a result of National Union's breach and (2) what amount of damages is allowed and appropriate?

The first issue is purely one of West Virginia insurance law. However, contrary to the styling of Graham's Complaint in this case (Doc. No. 1-2, at 4), a particular demand for relief is not an independent cause of action. Rather, Graham's demand for extra-contractual damages under *Hayseeds* is one part of Graham's breach of duty to defend action against National Union. Accordingly, the court construes both Graham's and National Union's motions as motions for *partial* summary judgment. The same analysis applies as with motions for summary judgment and

the issue of damages, if it remains in dispute following this Order, may proceed to trial.

B. Graham is not entitled to *Hayseeds* damages

In reversing this court's grant of summary judgment in favor of National Union, the Fourth Circuit concluded that National Union "violated its [duty to defend]" Graham in the State's lawsuit against him. Doc. No. 34, at 12. Moreover, the Fourth Circuit found that the Policy that created National Union's duty to defend Graham was a "general liability insurance policy." Id., at 2. Examining the Policy, it is plain that the entire Policy is composed of various liability insurance coverage types. See Doc. No. 13-5 (Coverage A is Comprehensive General Liability Insurance, Coverage B is Personal Injury Liability Insurance, Coverage C is Professional Liability Insurance, Coverage D is Stop Gap Liability Insurance, and Coverage E is Wrongful Act Liability Insurance). Both parties agree that National Union's particular duty to defend Graham arose out of Coverage E, the Policy's Wrongful Act Liability Insurance. See id., at 18-22.

The Policy's Wrongful Act Liability Insurance, like virtually any other form of liability insurance, is third-party insurance because it is "a contract to protect the insured from losses resulting from actual or potential liability to a third party." 14 Couch on Ins. § 198:3; see Doc. No. 13-5, at 18

(stating that National Union "shall have the right and duty to defend any suit against the 'insured' where that suit seeks "damages for a 'loss' arising from any 'Wrongful Act" of the 'insured.'"). More particularly, the Wrongful Act Liability Insurance purchased by the Council on Aging is very similar to a corporate D&O liability insurance policy—it insures the Council on Aging and its directors and officers, among others, against claims from third-parties.

As outlined above, Hayseeds damages are only recoverable where an insured "substantially prevails" against an insurer in a lawsuit to recover amounts owed under a first-party insurance policy. See Marshall v. Saseen, 450 S.E.2d 791, 796-97 (W.Va. 1994)(extending Hayseeds to cases involving underinsured or uninsured motorist insurance, making the "critical point" that both property damage insurance and underinsured or uninsured motorist insurance are "first-party insurance."); see also Graham's Cross-Motion for Partial Summary Judgment, Doc. No. 48, at 10 (drawing the same distinction as the court and citing Marshall for support).

However, Graham muddles the distinction between first-party insurance and first-party policyholders; again, the two are distinct. The former refers to a type of insurance, the latter refers to a type of insurance claimant, regardless of the type of insurance. After scouring the rulings of the West Virginia

Supreme Court of Appeals, this court could find no law extending Hayseeds damages to third-party insurance cases. The most analogous case, which still does not yield the result Graham seeks, is Loudin v. National Liability & Fire Insurance Company.

In Loudin, the West Virginia Supreme Court of Appeals addressed a unique situation in which an individual claimant under an insurance policy could qualify as both a first-party and third-party claimant. The Court held that "when a named policyholder files a claim with his/her insurer, alleging that a nonnamed insured under the same policy caused him/her injury, the policyholder is a first-party claimant in any subsequent bad faith action against the insurer arising from the handling of the policyholder's claim." Loudin v. Nat'l Liab. & Fire Ins. Co., 228 W. Va. 34, 716 S.E.2d 696, 703 (2011). This narrow holding cannot apply to Graham's lawsuit.

Graham is not a named policyholder and has not alleged that a nonnamed insured under the same policy has caused him injury. Moreover, in his original Reply to National Union's Response in Opposition to Graham's initial Cross-Motion for Summary Judgment, Graham admitted that his "action against National Union is not a common law bad faith claim. Indeed, the words 'bad faith' do not appear anywhere in Graham's complaint. Rather, a review of Graham's complaint reveals that [the complaint] is plainly seeking relief under a theory of breach of

contract." Doc. No. 23, at 9. There is simply no way to stretch Loudin such that it fairly extends Hayseeds damages to a lawsuit like Graham's.

Moreover, despite his confusion between the two insurance law concepts of first-party insurance and first-party claimant, Graham would nevertheless have this court extend Hayseeds to lawsuits where an insured sues an insurer for breach of duty to defend under a third-party insurance policy. Id. at 11. Graham suggests this extension based on the "policy" of Hayseeds. Id. This court declines—indeed, is unable—to make West Virginia law based on a party's policy arguments.

Accordingly, Graham is not entitled to recover any Hayseeds-type damages on his breach of duty to defend claim against National Union.

C. Graham is entitled to damages under *Pitrolo*

National Union believes it is liable to Graham for (1) reasonable attorney's fees and costs associated with his defense against the State's lawsuit against him and (2) attorney's fees and costs incurred in pursuing the instant lawsuit.[6] Doc. No. 47, at 2. Graham does not dispute National Union's concession. The court finds, after reviewing Aetna Casualty & Surety Company

[6] National Union imprecisely refers to the instant lawsuit as a declaratory judgment action. Graham seeks only affirmative, legal damages as relief in this case, not a declaratory judgment, which is usually equitable in nature.

v. Pitrolo, that National Union's belief is well-founded in West Virginia law.

Under Pitrolo, if an insurer breaches its duty to defend an insured, the insured is entitled to recover its litigation expenses, including costs and reasonable attorney's fees. Aetna Cas. & Sur. Co. v. Pitrolo, 176 W. Va. 190, 193, 342 S.E.2d 156, 159 (1986). Although Pitrolo awarded litigation expenses for the underlying lawsuit as well as the declaratory judgment action involved in that case, the Pitrolo principle is that an insured "should be fully compensated for all expenses incurred as a result of the insurer's breach of contract," both for the litigation expenses of the case below and at bar. Id.

Accordingly, under Pitrolo, Graham is entitled to recover reasonable attorney's fees and costs associated with his defense against the State's lawsuit against him and reasonable attorney's fees and costs incurred in pursuing the instant lawsuit. Furthermore, because Graham submitted proper documentation showing he signed a contingent fee agreement for the instant lawsuit (Doc. No. 49), that agreement controls the proper award of attorney's fees and costs concerning the instant lawsuit.

D. Graham is not entitled to prejudgment interest

Graham argues that he only seeks prejudgment interest on special damages, particularly those arising from the State's

lawsuit against him. See Doc. No. 48, at 7. However, the "special damages" Graham seeks are comprised entirely of attorney's fees and associated litigation expenses. Graham cites no West Virginia law that would essentially roll Pitrolo-type attorney's fee awards into a "special damages" bundle for purposes of awarding prejudgment interest on that amount. Indeed, State ex rel. Chafin v. Mingo County Commission suggests the West Virginia Supreme Court of Appeals would not apply prejudgment interest to attorney's fees awarded under Pitrolo. State ex rel. Chafin v. Mingo County Comm'n, 434 S.E.2d 40, 44 (W.Va. 1993). The court will not construe West Virginia's prejudgment interest statute to cover Pitrolo damages in this case, particularly when it appears the West Virginia Supreme Court of Appeals would not.

Accordingly, Graham is not entitled to recover prejudgment interest on any recoverable damages.

## IV. Conclusion

For the foregoing reasons, the court **GRANTS** defendant's motion for partial summary judgment (Doc. No. 46) and **DENIES** plaintiff's cross-motion for partial summary judgment (Doc. No. 48). Moreover, the court **ORDERS** the plaintiff to submit a renewed demand for damages in an amount consistent with the rulings in this Memorandum Opinion and Order.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 7th day of March, 2013.

ENTER:

David A. Faber
Senior United States District Judge